| 69 | 325 |
| 40a | 195 |
| 40a | 608 |
| 69 | 325 |
| 54a | 332 |
| 69 | 325 |
| 59a | 536 |
| 69 | 325 |
| 133 | 312 |
| 69 | 325 |
| 140 | 264 |

CARSON *et al., Plaintiffs in Error,* v. CUMMINGS.

1.  **Harmless Error in Ruling on Evidence.** The trial court erroneously excluded evidence of declarations made by one of the defendants to plaintiff, but permitted the defendant, himself, to testify to the facts of which he had spoken to plaintiff, and his testimony was to the same effect as that offered by plaintiff. *Held,* that the error was harmless, and afforded no ground for reversing the judgment.

2.  **Variance:** ACTION EX CONTRACTU: PROOF OF TROVER AND CONVERSION, OR FRAUD AND DECEIT. A party cannot sue on a contract of sale and purchase and recover for trover and conversion, or fraud and deceit. Therefore, where plaintiff sued for the price of cattle, alleging that they were purchased by defendant C. as agent for his co-defendants M., K. & Co., and were received by M., K. & Co. and sold by them, and the proceeds appropriated to their own use

*Held,* that if it appeared that M., K. & Co. had never authorized C.
to purchase for them, and that they received the cattle as the prop-
erty of C., and not as their own property, they were not liable,
notwithstanding it was shown that the cattle were bought by C. for
their account, and at the time they were delivered to M., K. & Co.
C. informed them that he had so bought them.    Whether M., K. &
Co. would have been liable to plaintiff in some other form of action,
*quaere ?*

*Error to Jackson Circuit Court.*—HON. SAM'L L. SAWYER,
Judge.

*Ballingal & Gwynne* for plaintiffs in error.

1.   The instruction given by the court, of its own
motion, is erroneous.    It necessitates a finding of the fact
that Cummings was at the time of his negotiations with
plaintiffs the duly authorized agent of Mathews, Kings-
bery & Co.; that they assented to the purchase by him at
the time it was made, and that as the cattle were received
by them they knew all the facts.    Their liability may have
been fixed by either of three facts—1st, that Cummings
was their agent; or, 2nd, by a ratification *ex post facto* of
his acts; or, 3rd, by tortious conversion of the property by
defendants, and the assumption of dominion over the same.
*Ruggles v. Washington Co.,* 3 Mo. 497; *Watson v. Bigelow,*
47 Mo. 413; *Henderson v. Railroad,* 17 Texas 575.

2.   If Cummings was not the authorized agent of
Mathews, Kingsbery & Co., he perpetrated a fraud upon
the plaintiffs.    After Mathews, Kingsbery & Co. were in-
formed of the facts by plaintiff Carson and defendant Cum-
mings, they still retained the cattle and the proceeds of
the sale of them, so that if Cummings was guilty of a
fraud, Mathews, Kingsbery & Co. thereby made themselves
*particeps criminis* and are liable to plaintiffs.    *Castle v. Bul-
lard,* 23 How. 189; Story's Eq. Jur., § 193 a.

3.   If it be true that Cummings was not the agent of
his co-defendants, then plaintiffs never parted by contract
with the title to their property, and after defendants, Math-

ews, Kingsbery & Co. were made acquainted with the facts, their subsequent action was tortious conversion of the property, and while the property was in their possession plaintiffs could have maintained replevin, but not having resorted to that remedy, they certainly have the right to maintain their action in the nature of trover, and a previous demand was not necessary. *Boyce v. Brockway*, 31 N. Y. 490; 2 Greenleaf Ev., §§ 636, 637; *Wilson v. Crocket*, 43 Mo. 216; *Battel v. Crawford*, 59 Mo. 215; *Koch v. Branch*, 44 Mo. 542; Wag. Stat., § 34, 347; *Raithel v. Dezetter*, 43 Mo. 145; *Reid v. Mullins*, 43 Mo. 306.

*Lathrop & Smith* for respondents.

To make Mathews, Kingsbery & Co. liable for the unauthorized acts of Cummings, he must have bought the cattle for them and in their name, and they must have ratified his purchase by receiving the cattle and selling them as their own. In other words, Cummings must have acted as their agent, though without authority at the time, and not for himself, and they must have afterwards ratified his act, by adopting the purchase for them, and receiving and selling the cattle as their own property. *Collins v. Swan*, 7 Rob. (N. Y.) 623; *Com. Bank v. Jones*, 18 Texas 811; *Fellows v. Commissioners*, 36 Barb. 655; *Doctor & Student*, Robt. Clarke & Co.'s Ed. 234; Story on Agency, (4 Ed.) § 243, p. 307; § 251 a, p. 316. In all of the cases of ratification cited by plaintiff's counsel, without exception, the act ratified had been done in the name of the principal and for his benefit. And no case can be found where the unauthorized agent acted in his own name and behalf, and where the alleged principal, who sold the property for the agent, was held liable from mere knowledge that the sale had been made to such agent upon the faith of his false representations as to what the principal would do toward securing the purchase money. The authorities cited to show that trover may be maintained, even without

demand, where the party could have brought replevin, have no bearing upon the case, because this suit was brought for the purchase price of the cattle sold, and the whole case was tried upon that theory.

HENRY, J.—Plaintiffs sued to recover $1,200, the price of sixty head of cattle alleged to have been purchased by W. J. Cummings, for his co defendants, A. B. Mathews, W. H. Kingsbery, J. E. Honsby and D. S. Alger. The petition alleged that Cummings was the agent of his co-defendants, who were co-partners doing business in Kansas City, and that in October, 1873, he was instructed by said firm to make a purchase of some cattle, and to promise their acceptance, or a joint note with Cummings, at ninety days, for the purchase money, and that Cummings purchased the cattle in question of plaintiffs, promising the acceptance of said firm, or a joint note of Cummings and the firm, payable ninety days after date, for the purchase money; that Cummings shipped the cattle to the firm, who sold them and appropriated the proceeds to their own use, and refuse to give their acceptance or note, or to pay the purchase price. The answer of his co-defendants denied that Cummings, at the time of the purchase, was their agent, or was ever authorized by them to purchase cattle for them on any terms, or that they ever promised their note or acceptance for the purchase money for any cattle whatever which Cummings might purchase.

The testimony of Cummings tended to sustain the averments in the petition. One of the plaintiffs, Carson, testified to the terms of the sale as alleged in the petition, and also to declarations made to him by Cummings as to his agency. That portion of his testimony in relation to declarations by Cummings, as to his agency, the court by instruction withdrew from the jury, and this is complained of as error. Until the agency is established otherwise, declarations of the person assuming to be agent are inadmissible to prove the agency. This

1. HARMLESS ERROR IN RULING ON EVIDENCE.

doctrine is well settled, and was recently recognized by this court in *Peck v. Ritchey*, 66 Mo. 114. It was of no consequence, however, in this case, inasmuch as Cummings testified that he was the agent of his co-defendants. If the jury would not believe his testimony to that effect, certainly no harm could have resulted to the plaintiffs from the exclusion of his declarations.

After the cattle came into the possession of the firm, and a portion of the lot was sold, the plaintiff, Carson, saw

2. VARIANCE: action excontractu: proof of trover and conversion, or fraud and deceit.

defendant Mathews in Kansas City, and told him on what terms the cattle was sold, but Mathews testified that he then informed Carson, in the presence of Cummings, that the latter had no such authority as he claimed. Carson did not demand the cattle that were unsold, or the proceeds of the sale of the others, but instituted this suit on the contract. The evidence of the bookkeeper of the firm was that the cattle were shipped by Cummings to the firm as his own cattle; that the proceeds of the sale were credited to him, and they were treated throughout as Cummings' cattle.

For plaintiff the court gave the following instruction: "If the jury believe from the evidence that W. J. Cummings was the agent of defendants, Mathews, Kingsbery & Co., to purchase said cattle, and as such agent bought the cattle from plaintiffs for Mathews, Kingsbery & Co., you will find for plaintiffs, and assess their damages at the price the cattle were sold for to said agent, with interest," &c.

The following asked by plaintiff the court refused: "If the jury find that said Cummings was not the agent of Mathews, Kingsbery & Co., and had no authority to buy said cattle, yet if he did buy them, and deliver them to Mathews, Kingsbery & Co., at the same time telling them upon what terms they were bought, that they, Mathews, Kingsbery & Co., were to pay for them with their acceptance, and Mathews, Kingsbery & Co. received and sold the cattle, you will find for plaintiffs and assess the damages as

above indicated.    3. If Cummings bought the cattle from plaintiffs without authority of Mathews, Kingsbery & Co., yet if he delivered the cattle to Mathews, Kingsbery & Co., and before Mathews, Kingsbery & Co. sold the cattle they understood upon what terms the cattle were bought, that it was upon their credit, if they afterwards sold said cattle, you will find for plaintiffs, and assess their damages as above indicated.

Of its own motion the court gave the following : "Although you may find that said Cummings had no authority from said defendants, Mathews, Kingsbery & Co. to purchase said cattle for them, yet if you find from the evidence that said Cummings did make said purchase for said Mathews, Kingsbery & Co., and in their name, and if you further find that when said cattle were delivered to said Mathews, Kingsbery & Co., said Cummings informed them that said cattle were purchased by him for them on their account, and also informed them that said cattle were so purchased for them under an agreement with plaintiffs that they, said Mathews, Kingsbery & Co. were to pay plaintiffs for said cattle by their acceptance or note, and if you further find that thereupon said Mathews, Kingsbery & Co. received said cattle from said Cummings as their own, and sold said cattle as their own, then said Mathews, Kingsbery & Co. are liable to plaintiff for the purchase price of the same, and interest thereon at six per cent. from the time of the commencement of this suit.    The jury are instructed that in determining the question whether said Cummings was, or was not, the agent of said Mathews, Kingsbery & Co., in their purchase of said cattle, they will disregard entirely the declarations made to said witness, Carson, by said Cummings, and testified to by him, said Carson, as to the authority of said Cummings to purchase said cattle for said Mathews, Kingsbery & Co."

If the instructions given by the court fully declared the law applicable to the facts, which the testimony, both for plaintiffs and defendants, tended to establish, the judg-

ment must stand. The first declared that if Cummings was the agent of his co-defendants in the transaction, then plaintiffs should recover. This is not complained of by either party.

The second was, that although the jury might find that Cummings had no authority from the firm to purchase the cattle for them, yet if he did make the purchase for them, and when the cattle were delivered to them Cummings informed them that they were purchased for them, under an agreement with plaintiffs that they were to give their acceptance or note for the purchase money, and that they received the cattle from Cummings as their own, and sold them as their own, then they were liable for the purchase price. The court held in this instruction that if, under the circumstances named in the instruction, the firm received the cattle, not as their own, but as Cummings', and sold them for him, they are not liable in this action. If they accepted the cattle as Cummings' cattle, the contract made by Cummings was repudiated. It amounted to a refusal to recognize or ratify the contract made by him. If they had accepted the cattle as their own, with knowledge of the terms of the contract made by Cummings, it would have been a ratification of that contract. The observations of the court in *Ruggles v. Washington Co.*, 3 Mo. 497, and *Watson et al., v. Bigelow*, 47 Mo. 413, quoted by appellants' counsel in their brief, are justified by the authorities. In the first case the court said: "It is a settled principle of law, as well as justice, that when an agent does any act for the use of his principal, and the principal enjoys the benefit and fruits of the act, it is too late, afterwards, for him to say the act was not by his authority." A similar remark occurs in the opinion of the court in *Watson v. Bigelow*. Here, however, unless the firm received the cattle as their own, they did not "enjoy the benefits and fruits of the act." If they had received and sold them for Cummings and paid him the proceeds, could this action have been maintained? We

apprehend not, although Cummings may have informed them, when he delivered the cattle, that he had purchased them for the firm, and promised their acceptance or note for the purchase money. The fact that they gave Cummings credit for the proceeds, on their account against him, did not change the relation of the parties to each other, and give plaintiffs a right to maintain this action, if it could not have been maintained before. The case of *Castle v. Bullard*, 23 How. 189, is to the same effect as the cases cited from our own reports. A party who sues upon a contract in order to recover, must prove the alleged contract. He cannot sue on a contract of sale and purchase, and recover for trover and conversion, or fraud and deceit. Whether defendants would have been liable, in a suit for trover and conversion, or in some other form of action will not be determined now, because the question, although discussed in plaintiffs' brief, is not presented by this record. Judgment affirmed, all concurring.

AFFIRMED.